UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOHN S. MALEK,**
    *Plaintiff*,

v.                                                                                   Case No. SA-21-CV-00073-JKP-HJB

**UNITED STATES OF AMERICA,**
    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a notice of substitution and application for order thereon and a motion to dismiss filed by Defendant United States of America (ECF Nos. 1, 4). Having considered the briefing (ECF Nos. 6, 7, 8) and applicable law, for the reasons set forth below, the Court denies without prejudice the Government's motion to dismiss and grants Plaintiff's request for limited discovery on the scope of employment question.

### I. PROCEDURAL HISTORY

On December 31, 2020, Plaintiff John S. Malek filed suit in the 433rd Judicial District Court, Comal County, Texas, bringing causes of action for defamation, defamation per se, negligent misrepresentation, and intentional infliction of emotional distress. *ECF No. 1-1*.

Defendants removed the case to federal court on January 29, 2021. *ECF No. 1*. Pursuant to 28 U.S.C. § 2679(d), the United States of America (the "Government") substituted itself as defendant in place of defendants Lauryn Deering, Kara Iskenderian, and Morgan Hicks. The removal papers include a certification from Mary F. Kruger, Chief of the Civil Division in the Office of the United States Attorney for the Western District of Texas stating that Deering, Iskenderian, and Hicks were acting within the scope of their federal employment at all times with

respect to the allegations made by Mr. Malek. *ECF No. 1-2*. The Government's notice and application for order thereon requests an order affirming the substitution such that the action shall proceed solely as an action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (FTCA). The Government filed the subject motion to dismiss on February 5, 2021 (ECF No. 4) asserting the doctrine of derivative jurisdiction and failure to exhaust the administrative remedies required by the FTCA.

Following an extension of time, on February 26, 2021, Mr. Malek filed an opposition to the notice of substitution and a response to the motion to dismiss. *ECF Nos. 6, 7*. Mr. Malek's briefing maintains that the United States is not the proper defendant because Deering, Iskenderian, and Hicks's actions were not within the scope of their employment with the Air Force. Therefore, Mr. Malek requests that the individual defendants be reinstated as the defendants and that the Government's motion to dismiss then be denied as moot. In the alternative, Mr. Malek requests limited discovery and an evidentiary hearing on the scope of employment. Mr. Malek's briefing includes witness statements made during the investigation into the complaint lodged against him, photos of text messages exchanged between Ms. Hicks and Ms. Iskenderian, and an unsworn declaration made by Mr. Malek.

On March 5, 2021, the Government filed a reply brief (ECF No. 8) asserting that Mr. Malek has not met his burden to show that Deering, Iskenderian, and Hicks were acting outside of the scope of their employment at the time of the alleged conduct. The Government also contests Mr. Malek's entitlement to discovery and an evidentiary hearing on scope of employment. And, for the first time, the Government asserts a statute of limitations argument. The Government's reply brief also includes a copy of the policy directive that implements Air Force equal opportunity policies (ECF No. 8-1).

## II. FACTUAL ALLEGATIONS

As is appropriate at this stage of the proceedings, the Court takes as true the following factual allegations in the original petition:

John Malek worked in a legal office with Lauryn Deering, Kara Iskenderian, and Morgan Hicks. *ECF No. 1-1* ¶¶ 14, 15, 18. Mr. Malek and Ms. Deering met in July or August of 2018. Mr. Malek and Ms. Iskenderian met in the spring of 2019. *Id.* ¶¶ 14, 15. While Mr. Malek had no formal military authority over Ms. Iskenderian, she was assigned to work in a section that fell under his technical supervision. *Id.* ¶ 15.

In early October 2019, several office moves were announced, which upset Ms. Iskenderian who felt she was being placed in an inappropriately subordinate assignment. *Id.* ¶ 16. The move taxed Mr. Malek and Ms. Iskenderian's working relationship and he attempted to repair this by trying to help her reach her professional goals, including engaging with her about professional topics of mutual interest and introducing her to fellow officers and attorneys who had worked in areas of law in which Ms. Iskenderian had expressed interest. *Id.*

Soon thereafter, Ms. Iskenderian, Ms. Deering, and Ms. Hicks began falsely accusing Mr. Malek of inappropriate behavior including staring at their breasts and buttocks, asking inappropriate questions about their personal lives, "tracking down" Ms. Iskenderian, making excuses to spend time with Ms. Iskenderian, and engaging in "weird" and "disgusting" behavior. *Id.* ¶¶ 17, 18. Consequently, Mr. Malek "discussed Ms. Iskenderian's professional comportment with her." *Id.* ¶ 19. In response to this "professional though informal counseling," Ms. Iskenderian and Ms. Hicks stepped up their efforts, spreading defamatory statements about Mr. Malek among a wide group of people, both within and outside the legal offices in which they all worked. *Id.*

The allegations were made not as part of a genuine complaint alleging harassment but as a personal vendetta against Mr. Malek to ensure his removal from his position as Chief of Military Justice at Lackland Air Force Base. *Id.* ¶¶ 20-22. Ms. Iskenderian went so far as to accuse leadership of "not doing anything about Mr. Malek's behavior and of not believing her." *Id.* ¶ 21. The vendetta was successful as Mr. Malek was removed from this position on December 12, 2019. *Id.* ¶ 22.

In spite of his removal, Ms. Deering, Ms. Iskenderian, and Ms. Hicks continued their campaign against Mr. Malek by repeating their false allegations to investigators. As a result, Mr. Malek was summarily sent to Randolph Air Force Base, where he remained without a formal title or supervisory responsibilities; he was informed that he was no longer eligible for professional awards and recognition in the Air Force because of the investigation; and he was further informed that his pending assignment as Deputy Staff Judge Advocate to Air Force Special Operations Command at Cannon Air Force Base was no longer an option. *Id.* ¶ 24.

Mr. Malek was initially offered a "Letter of Reprimand" as punishment for the falsely alleged misbehavior. After Mr. Malek challenged the Letter of Reprimand, the punishment was reduced to a "Letter of Admonishment," and was not placed in an "Unfavorable Information" file. *Id.* ¶ 26. Mr. Malek was then offered a "Referral Officer Performance Report (OPR)" documenting the alleged negative aspects of his performance. *Id.* After he responded to the OPR, it was withdrawn, and "a poorly written OPR replaced it," which he was not allowed to appeal. *Id.* Ultimately, Mr. Malek's JAG Corps career has been damaged so severely that it will be years before he is allowed to again lead Air Force personnel and he will never achieve the leadership goals that appeared so promising prior to Ms. Deering, Ms. Iskenderian, and Ms. Hicks's campaign against him. *Id.* ¶¶ 26-28.

### III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) *accord Lavery v. Barr*, 943 F.3d 272, 275 (5th Cir. 2019). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which subject matter jurisdiction may be challenged. Thus, the burden of establishing subject matter jurisdiction rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008) (citations omitted).

In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied that jurisdiction is proper. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). "A district court may dispose of a motion to dismiss for lack of subject matter jurisdiction based 'on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US West Communs.*, 117 F.3d 900, 904 (5th Cir. 1997)). "[I]n resolving whether a government employee was acting within the scope of his employment under the FTCA, . . . a 12(b)(6) or summary judgment standard, not the Rule 12(b)(1) standard, should be applied." *M.D.C.G. v. United States*, 956 F.3d 762, 768-69 (5th Cir. 2020) (citations omitted).

### IV. DISCUSSION

"Except when waived, the United States has sovereign immunity from suit." *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA waives sovereign immunity when an injury is

5

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). When a federal employee is sued, "the United States Attorney for the district where the civil action or proceeding is brought" (or the Director of the Civil Division) may certify "that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose." 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.4. The Government may further certify "that the covered person was acting at the time of the incident out of which the suit arose under circumstances in which Congress has provided by statute that the remedy provided by the [FTCA] is made the exclusive remedy." 28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.4.

Such certification has the effect of removing an action originally filed in state court to federal court and substituting the United States as the defendant. *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 420 (1995); 28 C.F.R. § 15.4. However, the certification is not *prima facie* evidence that the employee was acting within the employee's scope of employment. *Williams v. United States,* 71 F.3d 502, 505–06 (5th Cir. 1995). As such, it is subject to challenge and judicial review. *Gutierrez,* 515 U.S. at 434; *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995) (en banc).

The burden of proof lies with the party challenging the certification. *Palmer v. Flaggman,* 93 F.3d 196, 198–199 (5th Cir. 1996). To prevail, Malek must present evidence that disproves the Government's certification "by a preponderance of the evidence." *West v. Rieth*, 705 F. App'x 211, 213 (5th Cir. 2017) (per curiam) (citations omitted). Meaning, he "must show '*in fact*, . . . that the employee engaged in conduct beyond the scope of [her] employment.'" *Id.* To

6

...

obtain discovery to challenge the Government's scope of employment certification, Malek must allege "in either the complaint or a subsequent filing, specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of [her] employment." *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019) (citations omitted). "There is no right to even 'limited discovery' unless a plaintiff has made allegations sufficient to rebut the Government's certification." *Id.*

It is undisputed that Ms. Iskenderian, Ms. Deering, and Ms. Hicks were active federal employees of the Unites States Air Force at the time of the allegations set forth in Mr. Malek's original petition. *ECF Nos. 1-1*; *7 ¶ 21*. To determine whether these defendants were acting within the scope of their employment with the Air Force when they made the alleged defamatory statements, the Court looks to Texas law. *Garcia,* 62 F.3d at 127 (citing *Williams v. United States*, 350 U.S. 857 (1955) (per curiam)).

Under Texas law, "[t]he general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores v. Goodman,* 80 S.W.3d 573, 578 (Tex. 2002); *accord Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003). But when "an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Minyard*, 80 S.W.3d at 577. "This test applies to all scope of employment questions, including those involving allegedly defamatory statements." *Counts,* 328 F.3d at 214 (citing *Minyard,* 80 S.W.3d at 578). "*Minyard* makes clear that the focus of the inquiry in defamatory statement cases is whether the actual statements were made within the scope of employment." *Id.*

7

In 1997, the Fifth Circuit Court of Appeals issued *Rodriquez v. Sarabyn,* 129 F.3d 760 (5th Cir. 1997). The plaintiff filed suit against the United States, the Bureau of Alcohol, Tobacco and Firearms (ATF), and several ATF agents in their individual capacities, alleging that statements by the agents both to the media and in subsequent investigations were defamatory. *Id.* at 763. The Fifth Circuit held that the agents were acting within the scope of their employment because they had been authorized to speak to the media on behalf of the ATF and that "speaking to the media . . . was part of their job responsibilities." *Id.* at 770. The statements the agents made to investigators were also within the scope of their employment because the ATF directed them to speak to investigators and to cooperate with the investigation. The court found this directive created a duty, and "the statements made to the investigators were incident to the discharge of this duty." *Id.*

The seminal Texas Supreme Court decision addressing scope of employment in a defamation case adopted the test applied in *Rodriquez* and then distinguished the case:

> In *Rodriguez* and *Hooper*,[1] the courts applied the same test we do today to determine the [employer's liability] for defamatory statements. But, in [*Rodriguez* and *Hooper*], the evidence showed that the defamatory statements were the kind that the employees were authorized and expected to make and were closely connected to the performance of their duties. Here, on the other hand, the evidence shows only that Heflin lied *to* Minyard and not that Heflin lied *for* Minyard.

*Minyard*, 80 S.W.3d at 579 (emphasis in original) (internal citations omitted).

In *Minyard,* the plaintiff (Goodman) sued her manager (Heflin) and her employer (Minyard Food Stores) for defamation. *Id.* at 574–75. The alleged defamation occurred during

---

[1] *See Minyard*, 80 S.W.3d at 579 (describing the holding in *Hooper v. Pitney Bowes, Inc.,* 895 S.W.2d 773, 777 (Tex. App.—Texarkana 1995, writ denied): "[the court held] that employer was liable for defamatory statements managers made to other employees about a supervisor during the managers' investigation of that supervisor, because the evidence showed that the statements were made in the managers' authorized effort to investigate the supervisor's alleged misconduct").

8

the course of an investigation of Goodman's conduct. During the investigation, Heflin was interviewed and claimed Goodman kissed him on several occasions. *Id.* at 575. Goodman argued these acts never occurred; she had only given him a "friendly hug." *Id.* In light of Heflin's false statements, Goodman sued Heflin and Minyard for defamation.

A jury found that Heflin acted within the scope of his employment when he made the defamatory statements to the company investigators. *Id.* at 579. The Texas Supreme Court, however, concluded there was no evidence to show that Heflin's defamatory statements were made in "the course and scope of his employment." *Id.* The court held the evidence only showed "Heflin lied *to* [his employer] and not that Heflin lied *for* [his employer]." *Id.* (emphasis in original). Although the employer's policies required employees to participate in workplace misconduct investigations, the appellate court found the defamatory statements given during that investigation would not "further the employer's business" or "accomplish a purpose for which the employee was hired." *Id.* Consequently, the alleged defamatory statements were not made "for" his employer and, therefore, not within the scope of his employment.

In sum, the statements in *Minyard* could only be linked to a general duty of every employee to participate in a workplace investigation, whereas the duties of the agents in *Rodriguez* were created by ATF directive or inherent in the agent's "supervisory position." *Rodriguez*, 129 F.3d at 770. "There is a critical distinction between defaming someone to one's employer and defaming someone for one's employer." *Minyard*, 80 S.W.3d at 579. This critical distinction highlights the second and third elements of the test. That is, it is not enough to show that an employer's "policies require employees to participate in workplace misconduct investigations"— the statements giving rise to the lawsuit must have been made in furtherance of the employer's business and for the accomplishment of the object for which the employee was

9

hired. *Id;* see also *Counts*, 328 F.3d at 214 (reciting the test: "(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.").

In 2010, the Fifth Circuit again applied the test set forth in *Rodriguez* and distinguished the case. In *Anderson v. United States*, the plaintiff filed suit against a federal employee who wrote "a letter to the Disclosures Unit of the Office of Special Counsel (OSC), alleging that [plaintiff] had been confiscating mail from SSA claimants and holding on to it for more than a year, rather than allowing the mail to be properly distributed for review," 364 F. App'x 920, 921 (5th Cir. 2010) (per curiam) (internal quotations omitted). The Fifth Circuit held that although there was a "general duty" to report misconduct and illegal activity to government investigators, any "purported duty to do so" was "tangential" to the federal employee's duties, and the defamatory letter was not "for the accomplishment of the object for which [the employee] was hired." *Id.* at 924 (quoting *Minyard*, 80 S.W.3d at 577). Thus, the employee acted outside the scope of his employment. The court pointedly noted that in contrast to the federal agents in *Rodriguez*, "no one at the SSA specifically tasked [the defendant] to report on his supervisor's behavior, nor was it a specific function of his work duties." *Id. Cf. Bolton v. United States*, 946 F.3d 256, 261 (5th Cir. 2019) (applying Mississippi state law, finding that the defendants who made allegedly defamatory statements to the press were acting within the scope of their employment because they "were instructed to engage with the media on behalf of their respective agencies as part of their jobs").

In the case before this Court, the Government argues that because Deering, Iskenderian, and Hicks had a general duty to report the alleged misconduct and to participate in any subsequent investigation, any allegedly defamatory statements made in those endeavors was

made within the scope of their employment. In support of its position, the Government points to Air Force Policy Directive 36-27. *ECF No. 8-1*. The Directive is not conclusive of the Government's position, as it does not "specifically task" Deering, Iskenderian, and Hicks with reporting Malek's behavior nor does it make reporting a "specific function of [their] work duties." *Anderson*, 364 F. App'x at 924.

The Directive states that it is "extremely important" that "unlawful harassment be reported immediately" and "Military Airmen" who believe they have been subjected to sexual harassment "should promptly attempt resolution at the lowest possible level. If the supervisor is alleged to have engaged in the offending conduct, the report should be made to the next level supervisor or an Equal Opportunity Counselor/Specialist." *ECF No. 8-1* at 5. "Civilian Airmen" who believe they have been subjected to sexual harassment "must report it promptly . . . generally within 45 days in order to file a complaint." *Id.*

The plain language in the Military Airmen paragraph evidences a suggestion to report rather than a specific directive to report. The Civilian Airmen paragraph read contextually shows that the word "must" modifies "promptly," warning these Airmen that if one intends to file a complaint, the clock is ticking. Thus, the Directive does not conclusively establish that Deering, Iskenderian, and Hicks were acting within the scope of their federal employment. A general duty to report that applies to all employees does not establish that statements made in accordance with that duty or tangential to that duty are made within the scope of employment. As the case law above demonstrates, the Fifth Circuit requires more—specifically, the statements giving rise to the lawsuit must have been made in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. The Government's briefing fails to make these essential connections.

But this does not conclude the Court's analysis. To prevail, Mr. Malek must disprove the scope of employment certification "by a preponderance of the evidence." *Rieth*, 705 F. App'x at 213. Mr. Malek's original petition alleges that following managerial decisions that upset Ms. Iskenderian—who felt she was being placed in an inappropriately subordinate assignment and who bristled at receiving feedback from Malek regarding her unprofessional behavior—she concocted false allegations against him and spread those allegations within and outside of the organization. Thus, Malek alleges facts that suggest Ms. Iskenderian's statements were not in furtherance of her duties, to accomplish an objective of her job, or for her employer's benefit, but made out of a personal vendetta against him. *See Minyard*, 80 S.W.3d at 577 (noting that "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.") *Cf. Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (cautioning that scope of employment analysis "calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it"; thus, courts must objectively determine whether an employee's conduct furthered the employer's business and accomplished an object of the employee's job).

Mr. Malek supports his assertions about the defendants' scope of employment with witness statements taken during the investigation into his conduct. *ECF Nos. 6-3, 7-1*. These statements do not conclusively establish "*in fact*," that Deering, Iskenderian, and Hicks "engaged in conduct beyond the scope of [their] employment" but do support a finding that additional facts are needed before the Court can make a final determination. *Rieth*, 705 F. App'x at 214 (emphasis in original).

Additionally, Mr. Malek includes copies of text messages between Ms. Iskenderian and

Ms. Hicks that may support his position that Ms. Iskenderian and Ms. Hicks were acting outside the scope of their employment, because the statements do not appear to be made up the chain of command, to an EO Counselor/Specialist, or to an investigator. And the Government's briefing does not establish that either Ms. Iskenderian or Ms. Hicks made these statements because they were directed to do so or because making these statements was an object of either of their jobs. *See Rodriguez*, 129 F.3d at 770 (in which the agents "were authorized to speak to the media on behalf of the ATF, and speaking to the media . . . was part of their job responsibilities . . . and the ATF directed them to speak to investigators and to cooperate in the investigations").

Mr. Malek also presents an unsworn affidavit, which states that Deering, Iskenderian, and Hicks made the allegedly defamatory statements outside their scope of employment because the statements were made both before any formal complaint was made and after the investigation concluded and that defendants made defamatory statements to persons not employed with the Air Force. While a sworn affidavit would have been stronger evidence, Mr. Malek, by his request for limited discovery, may subject himself to deposition. *See Rieth*, 705 F. App'x at 214 (commenting that "it is notable that [the plaintiff] has not submitted an affidavit or sworn statement denying the allegations against him").

As a final note, the Court observes that the briefing does not sufficiently demonstrate how each individual defendant was or was not acting within the scope of her federal employment. The Court must conduct scope of employment analysis for each defendant individually, not as a group. *See, e.g., Rodriguez*, 129 F.3d at 765-772.

A plaintiff rebuts the Government's scope of employment certification by alleging "specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Bolton*, 946 F.3d at 260. And to prevail, the plaintiff must disprove the

scope of employment certification by a preponderance of the evidence. *Rieth*, 705 F. App'x at 213. Applying these standards, the Court concludes that Malek's briefing rebuts the scope of employment certification but does not disprove it. Given this, Malek may be able to meet his ultimate burden with supplemental briefing or limited discovery. To be permitted limited discovery, Malek must allege facts that "plausibly suggest" the defendants acted outside the scope of their employment. *Bolton*, 946 F.3d 256. Upon the foregoing, the Court concludes that he has met this burden.

## V. CONCLUSION

Having considered the briefing, evidence, and applicable law, the Court concludes that Malek rebutted the Government's certification and alleged facts that plausibly suggest the defendants acted outside the scope of their employment. Therefore, limited discovery is warranted. Accordingly, the Court **GRANTS** Plaintiff's request to engage in limited discovery to develop the facts regarding whether each Defendant was acting within the scope of her employment at the time of the allegations set forth in Mr. Malek's original petition. The Magistrate Judge will set forth the discovery parameters as this order returns this action to Judge Bemporad, who will continue to manage the disposition of all non-dispositive pretrial matters (*see* ECF No. 14). *Defendant's Motion to Dismiss* (ECF No. 4) is **DENIED** without prejudice to refiling.

**It is so ORDERED this 27th day of August 2021.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**