UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOHN S. MALEK,**

   *Plaintiff*,

v.                                          Case No.  SA-21-CV-00073-JKP

**UNITED STATES OF AMERICA,**

   *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States' Second Motion to Dismiss and the parties' responsive briefings. ECF Nos. 23, 25, 27, 32, 33. After due consideration of the parties' briefings, the record, and the applicable law, the Court **GRANTS** the United States' Motion to Dismiss. This action is **DISMISSED** without prejudice for lack of jurisdiction. Final judgment will be entered by separate order.

### BACKGROUND

This case arises from a state court action brought by Malek against three of his former U.S. Air Force colleagues, alleging they defamed him by discussing and reporting workplace sexual harassment allegations against him. Specifically, Malek alleges claims for defamation, defamation per se, negligent misrepresentation, and intentional infliction of emotional distress. The United States certified that the individually-named defendants were acting within the scope of their Air Force employment when the alleged conduct occurred, substituted itself as defendant in the case, and removed to federal court. The United States then filed a motion to dismiss,

arguing Malek failed to exhaust administrative remedies and, as a result, this Court lacks jurisdiction. Malek responded by arguing the individually-named defendants were acting outside the scope of their Air Force employment when the alleged conduct occurred. As a result, according to Malek, the United States is not the proper defendant, and the Court should reinstate the individually-named defendants. Malek, as the party challenging the government's certification, bears the burden of proof, by a preponderance of the evidence. Last year, the Court found that while Malek sufficiently pled his challenge to the government's certification, the record evidence was insufficient to support his allegations. The Court therefore granted Malek an opportunity to conduct limited discovery to support his position.

More than a year has passed since the Court's order, and the parties have engaged in limited discovery managed by U.S. Magistrate Judge Henry J. Bemporad. The United States now brings its second motion to dismiss, arguing Malek cannot meet his burden to show the individually-named defendants acted outside the scope of their employment. In the alternative, the United States argues that most of the allegedly defamatory communications Malek relies on are time-barred by the statute of limitations and offers other reasons why his remaining claims should be dismissed. For his part, Malek suggests more discovery is necessary because the United States failed to cooperate with his discovery requests, then relies on the same evidence he relied on last year to support his position that the United States is not the proper defendant. The Court requested additional briefing on the dispositive question of whether the record shows that the individually-named defendants were acting within the scope of their employment when the alleged conduct occurred. The parties provided their briefings, and the Court now issues its decision, finding in favor of the United States.

## LEGAL STANDARD

The United States' motion to dismiss challenges the Court's jurisdiction because Malek has failed to exhaust administrative remedies. Normally, district courts apply the Federal Rule of Civil Procedure 12(b)(1) standard to assess questions of subject matter jurisdiction. However, in a case such as this one, where the issue of jurisdiction is intertwined with the merits, district courts "deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). Specifically, the Fifth Circuit has held that "in resolving whether a government employee was acting within the scope of [their] employment under the FTCA, . . . a 12(b)(6) or summary judgment standard, should be applied." *Id*. at 150–51. Based on the procedural posture of this case—Malek has been afforded the opportunity to conduct limited discovery on the scope of employment question—the Court will apply the summary judgment standard.

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n.16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez,* 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material

fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

## DISCUSSION

At issue in this case is whether the individually-named defendants were acting within the scope of their Air Force employment when they allegedly defamed Malek. If their conduct was within the scope of their employment, the Government certification is proper, this case is subject to the Federal Tort Claims Act (FTCA), and the Court lacks jurisdiction because Malek failed to exhaust administrative remedies. If, as Malek argues, they were acting outside the scope of their employment, the FTCA does not apply, and they would be held personally liable. The Court does not reach the Government's arguments about the statute of limitations and other reasons why Malek's claims should be dismissed because the scope of employment question is dispositive.

**I.     Relevant Law**

The Westfall Act provides that, upon certification by the United States that a government employee was acting within the scope of their employment at the time of the allegedly tortious act, the United States may remove the action to federal court and substitute itself as the defendant in the suit. 28 U.S.C. § 2679(d)(2). For purposes of removal, the certification conclusively establishes that the employee was acting within the scope of their employment. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995). The Supreme Court has held that "district courts [have] no authority to return cases to state courts on the ground that the [United States'] certification was unwarranted." *Osborn v. Haley*, 549 U.S. 225, 227 (2007).

Courts are not precluded, however, from "resubstituting the federal official[s] as defendant for purposes of trial if the court determines, postremoval, that the [United States'] scope-of-employment certification was incorrect." *Id.*; see also *Gutierrez de Martinez*, 515 U.S. at 434–37. In the Fifth Circuit, a plaintiff who challenges the United States' certification has the burden of proving, by a preponderance of the evidence, that the employee's conduct was not within the scope of their employment. *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995); *West v. Rieth*, 705 F. App'x 211, 213 (5th Cir. 2017) (per curiam). The United States argues Malek cannot meet his evidentiary burden to show the individually-named defendants acted outside the scope of their employment at the time the alleged conduct occurred. To overcome this challenge, Malek must proffer competent evidence showing a genuine dispute of material fact exists as to the scope of employment question.

In reviewing the certification, federal courts must apply the law of the state in which the tortious act occurred. *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir.1995). The alleged conduct in this case occurred in Texas. Under Texas law, an employee's conduct is considered to

6

fall within the scope of their employment if their actions were "(1) within the general authority given [them]; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." *Williams*, 71 F.3d at 506 (citing *Mata v. Andrews Transport, Inc.*, 900 S.W.2d 363, 366 (Tex.App.—Houston [14th Dist.] 1995, no writ)). To establish employer liability for defamation in Texas, "the defamatory statement must be (1) referable to a duty owed by the employee to the employer and (2) made while the employee is in the process of discharging that duty." *Rodriguez v. Sarabyn*, 129 F.3d 760, 769 (5th Cir.1997) (citing *Texam Oil Corp. v. Poyner*, 436 S.W.2d 129, 130 (Tex.1968)). But when "an employee deviates from the performance of [their] duties for [their] own purposes, the employer is not responsible for what occurs during the deviation." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 578 (Tex.2002). To establish a deviation, an employee has to "do more than mentally turn aside from his employer's business and must be outside of his actual duties of employment." *Rodriguez*, 129 F.3d at 769. A plaintiff rebuts the United States' scope of employment certification by alleging "specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of [their] employment." *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019) (citations omitted). To prevail, the plaintiff must disprove the scope of employment certification by a preponderance of the evidence. *Rieth*, 705 F. App'x at 213.

## II. Discovery

In its order of August 27, 2021, the Court denied without prejudice the Government's first motion to dismiss, finding Malek sufficiently alleged the United States' certification was improper because the individually-named defendants were acting outside the scope of their employment when the alleged conduct occurred; however, the record evidence was insufficient

for Malek to meet his burden of proof. The Court therefore granted Malek the opportunity to conduct limited discovery on the scope of employment question. Now that discovery has concluded, the Court reviews the record before it to resolve the scope of employment question. In his response to the Government's second motion to dismiss, Malek relied on the same evidence he offered last year, before discovery began—witness statements and text messages from the Air Force investigation into his conduct and his own affidavit.[2] In response to the Court's request for any new evidence obtained over the past year of discovery, Malek provides documents that are irrelevant to the question before the Court and not properly produced in discovery. Specifically, he attaches an Air Force recruiting flyer, biographies of the individually-named defendants, his own performance evaluations, and an unredacted version of the Air Force investigation report which he had previously produced piecemeal and in redacted form. As the United States points out, documents not produced in discovery cannot be used to oppose a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 37(c).[3] The Government attaches a copy of its requests for production, which shows Malek declined to provide these materials in discovery. ECF No. 33-1. Therefore, the Court omits the recruitment flyer, biographies, performance evaluations, and unredacted Air Force investigation documents from its analysis.[4]

Malek suggests any deficiency in the evidence is attributable to the Government's failure to cooperate with his discovery requests. He attaches copies of the Government's responses to

---

[2] Malek provides a sworn affidavit to replace his earlier-produced unsworn affidavit. The new affidavit includes some details that the previous affidavit did not, such as the names of witnesses who testified in the Air Force investigation; however, his basic allegations are the same. To the extent that there are differences between the two, the Court relies on the sworn affidavit.

[3] Although the Government filed a motion to dismiss, the Court applies the summary judgment standard, for the reasons articulated in the legal standard section of this memorandum opinion and order.

[4] The Court notes that even if these submissions were properly produced in discovery, they would not affect the Court's analysis of the scope of employment question. The recruitment flyer, biographies, and performance evaluations are irrelevant and the unredacted Air Force investigation includes substantially similar information to that which was previously produced in redacted form.

8

his interrogatory requests and requests for admissions as evidence of its purported obfuscation. In reviewing these documents, the Court finds that where the Government objected to Malek's discovery requests, its objections were proper. The Court granted the parties leave to conduct limited discovery on the specific question of whether the individually-named defendants were acting outside the scope of their employment when the alleged conduct occurred. The United States objected to many of Malek's requests as being outside the Court's approved, limited scope of discovery. For example, in his fourth interrogatory, Malek requests: "If you intend to impeach Plaintiff or any person with knowledge of relevant facts with evidence of a criminal conviction, please provide the cause number, county, and state of conviction, the date of conviction, and the type of crime." ECF No. 25, p. 52. This request is outside the limited scope of discovery established by the Court, as it is unrelated to the individually-named defendants' alleged conduct. The Government raised other legitimate objections to requests that were overbroad, unduly burdensome, and not proportional to the case, such as a request for information about "any communications and conversations you had with the Plaintiff or Plaintiff's representatives following the incident made the basis of this suit." *Id*. The Government correctly notes that this question is overbroad as it would incorporate all conversations between Malek and his employer, the Government, over a period of years. The United States responded to Malek's appropriate requests and properly objected to his inappropriate requests. The Court, therefore, finds the Government's responses to Malek's requests for discovery were appropriate and no further discovery is warranted in this case.

    **III.**    **Evidence**

Based on the record before it, the Court finds the individually-named employees were acting within the scope of their employment when the allegedly defamatory statements were

made, because those statements were (1) referable to a duty owed by them to the Air Force and (2) made while they were in the process of discharging that duty. *Rodriguez*, 129 F.3d at 769.

In its first motion to dismiss, the Government relied on Air Force Policy Directive 36-27 for the prospect that the individually-named defendants were acting within the scope of their employment when the allegedly defamatory statements were made because it directs employees who believe they have been subjected to unlawful sexual harassment to "promptly attempt resolution at the lowest possible level." ECF No. 8-1, p. 5. The Court found the directive was not conclusive evidence on the scope of employment question because it did not "specifically task" the individually-named defendants with reporting Malek's behavior. *Anderson*, 364 F.App'x at 924. To support its second motion, the Government directs the Court to Air Force Manual 1-101, which deals with Commander Directed Investigations like the investigation into Malek's behavior. ECF No. 23-3.[5] That manual imposes an affirmative "duty" on military and civilian witnesses to testify and otherwise "fully cooperate" with an investigation. *Id*. at 16, 18.[6] The Court finds this manual, coupled with the policy directive, conclusively establishes the individually-named defendants were acting within the scope of their employment when they participated in the Air Force investigation.

Malek suggests that some statements attributed to the individually-named defendants fall outside the scope of their employment because they were not made within the context of the official investigation. That is, according to Malek, any statements the employees made outside of

---

[5] Malek objects to the manual as inadmissible on the grounds that it is unauthenticated hearsay. The Court overrules the objection, finding the manual is admissible as a self-authenticating public document and official publication under Federal Rules of Evidence 902(1) and 902(5) and is subject to the public records hearsay exception under Rule 803(8). Courts have consistently held that information like the Air Force manual, which is available on a government website, is self-authenticating and subject to the public records exception to the hearsay rule. *See Riverkeeper v. Taylor Energy Co., LLC*, 113 F.Supp.3d 870, 881 n.52 (E.D.La. 2015).

[6] The Court notes that the manual provided by the Government is dated April 9, 2021, which is after the Air Force investigated Malek; however, an earlier version of the manual from 2018 is available online and contains the same language as the 2021 manual regarding military and civilian witnesses' duty to testify.

the official investigation were not made "in the process of discharging [their] duty" to cooperate with the investigation. *Rodriguez*, 129 F.3d at 769. Malek's argument includes both a temporal component and a personal component: he says comments made before the investigation commenced, or to people who were not conducting the investigation, fall outside the employees' duty to participate in the investigation. The record evidence, however, does not support Malek's contention. Witness statements show that before the investigation began, Malek's accusers engaged in multiple conversations seeking advice on how to handle his behavior and whether to report it. The Government argues, and the Court agrees, that these statements were made in furtherance of the investigation into Malek's conduct. Cooperation with an investigation necessarily includes taking steps to initiate it, when appropriate. Any confusion about whether the employees' duty to cooperate extended to their pre-investigation conversations is cleared up by the Air Force policy directive that employees who think they may have experienced sexual harassment "should promptly attempt resolution at the lowest possible level." ECF No. 8-1, p. 5. For these reasons, the Court agrees with the Government's assertion that conversations incident to the investigation were within the scope of the investigation and, therefore, within the scope of the employees' duties.

Malek further alleges his accusers' statements were not made in furtherance of "any Air Force objective but were made outside the course and scope of their employment . . . based on purely personally motivated acts not in the authority of employment with the Air Force." ECF No. 25, p. 9–10. He analogizes to the Fifth Circuit decision in *Anderson v. United States*, in which the court found that although the defendant may have had a general duty to report misconduct, his comments were made out of a personal vendetta against his supervisor, not to accomplish an objective of his job. *Anderson v. United States*, 364 Fed. App'x. 920 (5th Cir.

2010). Malek argues that, like the *Anderson* defendant, the individually-named defendants in this case, "at all times" took actions that were "personal, vindictive, and motivated by personal animosity." ECF No. 25, p. 8. In his affidavit, Malek alleges the individually-named defendants "made false statements or misrepresentations in order to alter the outcome of an investigation," specifically, the Air Force investigation into whether Malek sexually harassed his colleagues. ECF No. 25, p. 17. Malek states that a defendant who accused him of sexually harassing her "talked with many people who would have otherwise known nothing of her allegations, thereby tainting the witness pool of people who were around to see us in a professional capacity." *Id*. Such unsubstantiated and conclusory statements, however, are not competent summary judgement evidence, and therefore, are insufficient to meet Malek's burden of proof. To overcome the United States' certification, Malek must provide evidence to establish, by a preponderance of the evidence, his allegations are true.

On the record before it, the Court finds no evidence of vindictiveness on the part of the individually-named defendants. Malek alleges the individually-named defendants took actions that were "personal, vindictive, and motivated by personal animosity." ECF No. 25, p. 8. To the contrary, the witness testimony consistently shows the defendants who accused Malek of sexual harassment were reluctant to report their concerns—and even expressed concern about Malek's wellbeing. One witness testified that they told Malek's accuser she should report his behavior to leadership, and she "seemed hesitant because she didn't want [Malek] to get in trouble." ECF No. 7-1, p. 3. Another witness explained: "Being new to the Air Force, she was not sure what to do. She did not want to be that person in [the] office and just wanted to come to work and do her job." *Id*. at 6. Another witness, who reported observing Malek's inappropriate behavior firsthand, said she suggested reporting Malek's behavior to leadership, but her colleague "did not want it to

escalate to that point," adding that the colleague was "hopeful that [Malek] would leave her alone, but he didn't." *Id*. at 20. In a text message exchange between two of the individually-named defendants, one wrote: "I really want to say something or do something but I don't know how or what. And I don't want to be the over sensitive women [sic] who gets a bad reputation. But I'm physically uncomfortable at work… It's not getting better no matter how hard I try to enforce boundaries." ECF No. 7-2. These statements do not evidence a vindictive plot to attack Malek's character, but rather a genuine concern for how to appropriately handle workplace sexual harassment allegations.

     The record evidence also fails to show that the individually-named defendants "tainted the witness pool" to alter the outcome of the Air Force investigation into Malek's behavior. Malek alleges a defendant who accused him of sexually harassing her "talked with many people who would have otherwise known nothing of her allegations, thereby tainting the witness pool of people who were around to see us in a professional capacity." ECF No. 25, p. 17. The witness testimony does include statements from people who spoke only of their conversations with Malek's accusers, and not from firsthand knowledge of his behavior. However, other witnesses testified to their personal observations of Malek's inappropriate behavior. One witness testified that she noticed Malek would stare at her colleague's chest area, watch her behind as she left his office, and come up behind her, invading her personal space. ECF No. 7-1, p. 20. She said when she asked her colleague whether she thought his behavior was odd, her colleague expressed relief "because someone else had begun to notice that his behavior was inappropriate." *Id*. In a text message exchange, another colleague observed of Malek, "He follows you all the time, tracks you down, it's to the point where it's getting beyond weird!" ECF No. 7-2. These statements do not evidence a conspiracy to defame Malek by leveling false accusations, but rather an

environment in which multiple women were witness to the same concerning behavior. The record contains no evidence of conversations between these women discussing how to corroborate their stories, or otherwise prejudice Malek in the Air Force investigation.

What the evidence does show is the individually-named defendants participated in an Air Force investigation which ultimately substantiated the sexual harassment allegations leveled against Malek. Two of the defendants who Malek named in his original lawsuit were complainants in the Air Force investigation, the other was a witness. According to witness statements, Malek's unwanted attention made one of women feel "extremely uncomfortable" and "physically scared." ECF No. 7-1, p. 23. One witness testified that she said she "hated to come to work" because she had to face him every day. *Id*. at 6. Specifically, Malek is accused of sitting in the woman's office uninvited, saying he "likes watching her work," showing her a picture of someone with their pants down, and coming to her office on Sundays when her car was the only car in the parking lot and hovering as she tried to get work done. *Id*. at 3, 6, 20. Two witnesses reported that they observed Malek playing to with a pocketknife while he was talking "in a nervous manner." *Id*. at 11, 17. Malek's accuser would sometimes call her husband when Malek entered her office, because Malek made her feel uncomfortable. *Id*. at 11. In a text message exchange, one of the women wrote of Malek: "I'm really getting to the point that I'm really uncomfortable. Like I don't feel ok [sic] being alone in the office with this guy [frown emoji]. But there really isn't anything I can do." ECF No. 7-2. Based on this and other evidence, the Air Force investigator substantiated the accusers' allegations against Malek for sexual harassment and conduct unbecoming an officer.

The Government argues that, from a policy standpoint, subjecting Air Force employees to personal liability for discussing and reporting sexual harassment would have a "chilling,

isolating, and silencing effect" on future accusers' willingness to come forward. ECF No. 33. To be sure, judicial review is appropriate to determine whether the defendants, like the *Anderson* defendant, acted out of a personal vendetta against the plaintiff. However where, as here, the record shows that the government employees' statements were made in the context of an official investigation, the Government has an interest in reducing the potential chilling effect on future accusers. That is particularly true in a case such as this one, where the Air Force ultimately substantiated the accusers' allegations—and Malek's damages all stem from the investigation's impact to his Air Force career. Malek had an opportunity to seek review of the Air Force's findings but chose not to do so. Instead, he sued his accusers in their individual capacities. The Government certified that the defendants were acting within the scope of their employment when the alleged conduct occurred and substituted itself as defendant. Government certification exists to allow federal employees to do their jobs without fear of being subjected to personal liability. In a case such as this, where the plaintiff has failed to offer sufficient evidence to show the Government's certification was improper, the Court will not reinstate the individually-named defendants. The Court therefore affirms the Government's certification that the individually-named defendants were acting within the scope of their Air Force employment when the alleged conduct occurred. As a result, the Court finds the Government is the proper defendant, this case is subject the FTCA, and the Court lacks jurisdiction because Malek failed to exhaust administrative remedies. This case is therefore dismissed without prejudice for want of jurisdiction.

## CONCLUSION

Based on its finding that Malek has failed to meet his burden of proof to establish that the individually named defendants acted outside the scope of their employment when the alleged

conduct occurred, the Court finds that it lacks jurisdiction in this case and, therefore, **GRANTS** the United States' Motion to Dismiss and **DISMISSES** this case without prejudice. Final judgment will be entered by separate order.

    It is so ORDERED.
    SIGNED this 4th day of October, 2022.

                                                        _____
                                                         JASON PULLIAM
                                                         UNITED STATES DISTRICT JUDGE